Filed 12/27/23  P. v. Lindsey CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BRANDON LAMONT LINDSEY,<br><br>        Defendant and Appellant. | A164328<br><br>(Contra Costa County<br>Super. Ct. No.<br>52001139) |

Defendant (and appellant) Brandon Lamont Lindsey appeals from a judgment of conviction and sentence imposed after a jury found him guilty of multiple crimes including assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b)).[1]  He contends his conviction should be reversed because the trial court elicited from a witness that Lindsey used a semiautomatic, rather than a fully automatic, firearm.  He further contends the case should be remanded so the court can exercise its sentencing discretion under amendments to section 1170 and other recent legislation.  Respondent agrees that a remand for resentencing is appropriate.  We will remand for the trial court to consider resentencing but affirm the judgment in all other respects.

---

[1]     All statutory references herein are to the Penal Code.

1

# I. FACTS AND PROCEDURAL HISTORY

In January 2020, the Contra Costa County District Attorney filed an Information charging Lindsey with attempted murder (§§ 664/187, subd. (a)—count 1), shooting at an occupied motor vehicle (§ 246—count 2), assault with a semiautomatic firearm (§ 245, subd. (b)—count 3), and attempted second degree robbery (§§ 664/211—count 4). As to counts 1, 2 and 4, it was alleged that Lindsey personally and intentionally discharged a firearm (§ 12022.53, subds. (b)–(d)). As to count 3, the Information alleged that he personally used an assault weapon or machine gun (§ 12022.5, subd. (b)).

## A. Trial

During the jury trial, the following facts were elicited.

At approximately 8:30 p.m. on September 21, 2018, John E. drove his then-girlfriend, Juliet W., in a Range Rover SUV to an address in Antioch. Juliet W. told John E. that she needed to speak to a man called "B," who was "going to give her some painkillers" (described elsewhere in the record as "Norcos").

When they arrived, a man later identified as Lindsey directed them down a long alley. John E. drove down the alley to its dead end. Lindsey claimed to be waiting for his friend to arrive with the drugs.

Lindsey's friend eventually arrived in a small Honda or Toyota. Lindsey spoke to the friend, who then backed his car up the alley and stopped, blocking John E.'s way out.

John E. became nervous and drove toward Lindsey and his friend. Lindsey reached into his friend's car, pulled out a gun, ran up to John E.'s open window, and pointed the gun at his face. Lindsey demanded, "Give me all your money." Keeping his eyes on Lindsey's face, John E. told Juliet W. to give Lindsey the money because he did not want to get shot. Juliet W. said

no, and Lindsey pointed the gun at her.  When she reached into her purse for the money, Lindsey pointed the gun back at John E.[2]

John E. thought Lindsey was going to start shooting, so he turned towards the center console and pulled his left arm up.  Lindsey began firing, and John E. heard three gunshots.  If John E. had not moved, all three bullets would have entered the left side of his chest.  Instead, Lindsey shot the inside of John E.'s left forearm, and two bullets went into the driver's seat.

Juliet W. threw her money at Lindsey, and John E. "hit the gas" and "pushed" Lindsey's friend's car out of the way.  John E. drove to a store, 911 was called, and the police responded.

Antioch Police Officer Mark Moraga found two nine-millimeter bullet casings on the front seat of John E.'s SUV, along with bullet holes and bloodstains.  The bullet casings were consistent with being shot from a semiautomatic firearm.  On cross-examination, Moraga acknowledged there may be firearms other than semiautomatic firearms, such as revolvers, that could shoot a nine-millimeter round.  Detective Adrian Gonzalez testified, however, that revolvers do not eject casings, while semiautomatic firearms do, and he would not expect to find casings if a revolver was used in a shooting.  Police did not find the firearm at the scene.

Text messages recovered from Juliet W.'s phone indicated that someone named "B" had told her where to buy pills and that she texted "B"'s number when she arrived.  A photograph of a man known to another witness as "B" was identified as a photograph of Lindsey.  From photographs of potential

---

[2]     John E.'s trial testimony as to whether the firearm was an automatic or semiautomatic is the subject of the main issue on appeal, discussed later in this opinion.

suspects, John E. identified Lindsey as the shooter. Lindsey provided his cellphone number to police, who determined that the cellphone was within a quarter of a mile of the crime scene at the time of the shooting and moved away from the scene after the shooting.

B. Jury Verdict and Sentence

The jury found Lindsey guilty on all counts and found the enhancement allegations true. The trial court sentenced Lindsey to 23 years in state prison. The sentence consisted of the upper term of nine years on count 3 (assault with a semiautomatic weapon), the upper term of 10 years for an enhancement on that count under section 12022.5, subdivision (a),[3] eight months (one-third the midterm) on count 4 (attempted second degree robbery), plus three years and four months (one-third the term) for a section 12022.53, subdivision (b) firearm enhancement on that count. As to count 1 (attempted murder), the court imposed a concurrent nine-year term, striking the firearm enhancement under section 1385. As to count 2 (shooting at an occupied motor vehicle), the court imposed but stayed, pursuant to section 654, a seven-year upper term, striking the firearm enhancement under section 1385. Lindsey filed a timely notice of appeal.

II. DISCUSSION

A. Trial Court's Questioning of Victim John E.

As the jury was instructed, a conviction on count 3 required proof beyond a reasonable doubt that Lindsey perpetrated an assault with a semiautomatic firearm or pistol. (§ 245, subd. (b).) Lindsey contends the trial court committed misconduct and violated his due process and jury trial

---

[3]     Before the jury was given its final instructions, the enhancement alleged under section 12022.5, subdivision (b) was amended to allege an enhancement under section 12022.5, subdivision (a), to conform to the proof at trial.

4

rights by effectively directing John E. to testify that the firearm was a "semiautomatic." His argument is unpersuasive.

1. Trial Court Proceedings

On direct examination, the prosecutor asked John E. to describe the gun Lindsey pointed at him. John E. testified it was "[a]n automatic weapon." The prosecutor asked, "What did it look like?" Defense counsel objected that the question called for speculation. Before the court could finish ruling, John E. responded, "I don't know. I mean—[¶] I'm not really good with guns. I didn't have any guns at the time." The court overruled the objection and told the witness he could answer the question—specifically, what the gun "looked like." John E. testified: "I know what a revolver looks like. I know what an automatic looks like. It looked like an automatic, like maybe a 9 milliliter [sic], .45."

At that point, the trial court interrupted the prosecutor and engaged John E. in the following exchange, which is at the heart of Lindsey's appeal: "THE COURT: Just to make sure, an automatic weapon is a machine gun, okay. So— [¶] THE WITNESS: Okay. Well— [¶] THE COURT: — it's a gun that you could fire with one pull of the trigger, fires multiple bullets with one squeeze. I understand you to say that maybe this was a semiautomatic firearm. Was that a better description? [¶] THE WITNESS: Yes. [¶] THE COURT: Okay. Go ahead." Defense counsel did not object.

The prosecutor then asked John E. to clarify his description of the firearm, as follows: "[PROSECUTOR] Q. You said it looked like a 9-milliliter [sic] or .45-caliber gun? [¶] A. Correct. [¶] Q. So was it on the smaller side? Did it appear to be a smaller gun? [¶] A. I don't know. I didn't pay a lot of attention to the gun. I paid attention to his face. [¶] THE COURT: Difference between, let's say, a handgun or a long gun. Was it a

5

handgun or— [¶] THE WITNESS: It was a handgun. [¶] THE COURT: Handgun. Okay. [¶] Go ahead. [¶] THE WITNESS: One that I would hold in my hand and go to the shooting range with." (Bolding removed.) During cross-examination, defense counsel did not ask John E. whether the firearm was an automatic or a semiautomatic.

Before closing argument, the trial court instructed the jury on the offense of assault with a semiautomatic firearm. Among other things, the court instructed: "A semi-automatic firearm or semi-automatic pistol is defined as a firearm or pistol with an operating mode that uses the energy of an explosive and a fixed cartridge to extract a fired cartridge and chamber a fresh cartridge with each single pull of the trigger." (See CALCRIM No. 875.) There is no dispute this instruction was proper.[4]

In closing argument, while discussing the firearm enhancement on count 1, the prosecutor stated: "[John E.] told you it looked like a semi-automatic weapon. And there were bullet holes in the driver's seat and 9-milliliter [sic] shell casings in the driver's seat where [John E.] was shot." After turning to the count 3 charge of assault with a semiautomatic weapon, the prosecutor explained why the presence of those casings proved Lindsey had used a semiautomatic firearm: "We know that the firearm the defendant used was a semi-automatic firearm *based on Officer Moraga['s] and Detective Gonzalez's testimony about semi-automatic firearms*." (Italics added.) As to Moraga's testimony, the prosecutor explained (consistent with CALCRIM No. 875) that a semiautomatic "is a pistol that extracts a fired cartridge and

---

[4]    "A semiautomatic firearm 'fires once for each pull on the trigger and reloads automatically, but requires the shooter to release the trigger lever before another shot can be fired.' [Citation.] An automatic firearm 'will continue firing until either the trigger is released or the ammunition has been expended.' " (*In re Jorge M.* (2000) 23 Cal.4th 866, 874, fn. 4.)

chambers a fresh cartridge with each single pull of the trigger," and "Officer Moraga, who testified about the 9-milliliter [sic] shell casings found inside of [John E.'s] car after the shooting[,] . . . told you that 9-millimeters are commonly, at least in his experience, found in semi-automatic firearms." The prosecutor recounted Detective Gonzalez's testimony "that a semi-automatic weapon fires one bullet at a time [and] at the same time automatically reloads while ejecting [the] shell casing." The prosecutor continued: "So it extracts a fired cartridge and chambers a fresh cartridge with each single pull of the trigger. He told you that that was in contrast to the way a revolver works, which is not a semi-automatic firearm. He told you a revolver does not eject shell casings, that you would have to actually kick out the barrel and dump out shell casings if you want to leave them behind for some reason." The prosecutor concluded: "The firearm the defendant used ejected shell casings, just as a semi-automatic firearm does. So it proves the defendant used a semi-automatic firearm in this case."

### 2. Forfeiture

"As a general rule, a specific and timely objection to judicial misconduct is required to preserve the claim for appellate review." (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1320 (*Seumanu*).) As Lindsey acknowledges, "defense counsel did not object to the trial court's misconduct and erroneous instruction." Nor did defense counsel ask the court to admonish the jury with a curative instruction. Further, there is no indication in the record or argument from Lindsey that an objection would have been futile. Lindsey therefore forfeited his challenge based on purported judicial misconduct or instructional error arising from the judge's questioning of John E. about the firearm. (*Ibid.* [failure to object to the trial judge's comment forfeited a claim on appeal that it violated his federal constitutional rights]; *People v. Silveria*

7

*and Travis* (2020) 10 Cal.5th 195, 320 [claim that the trial court abused and unequally treated defense counsel in violation of the Sixth, Eighth, and Fourteenth Amendments was forfeited due to the failure to object at trial on the ground of judicial misconduct]; *People v. Harris* (2005) 37 Cal.4th 310, 348–350 [challenge based on the trial court's questioning of defendant was "not cognizable on appeal" due to defense counsel's failure to object at trial].)[5]

3. Ineffective Assistance of Counsel

Lindsey argues, "[t]o the extent counsel's failure [to object] waives his claims on appeal, the claims are properly before this Court through the prism of an ineffective assistance of counsel claim." To obtain relief for ineffective assistance of counsel, Lindsey must show that (1) his "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

---

[5]     In his reply brief, Lindsey argues that no objection was needed because the trial court's "instruction" on what constitutes an automatic firearm "detrimentally skewed the jury's determination of an element of the offense charged in count three" in violation of his substantial rights under the Fifth and Sixth Amendments to the federal Constitution. (Citing § 1259 [appellate court may review an instruction even if no objection was made in the trial court, "if the substantial rights of the defendant were affected thereby"].) But the court's explanation to the witness of the nature of an automatic weapon was not a jury instruction, and the above-cited cases found a waiver or forfeiture of even constitutional rights. Furthermore, if the challenge had been preserved, and even if the court's questioning of John E. constituted judicial misconduct, Lindsey has not demonstrated entitlement to relief. Where judicial misconduct is found, the question becomes "whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial." (*People v. Snow* (2003) 30 Cal.4th 43, 78; *People v. Ng* (2022) 13 Cal.5th 448, 570.) No due process violation occurs except in " 'the exceptional case presenting extreme facts.' " (*People v. Nieves* (2021) 11 Cal.5th 404, 498.) Lindsey has not met that burden.

8

been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688, 694.) He fails to make either showing.

### a. Defense Counsel's Performance

Lindsey contends "the trial court committed misconduct by interrupting the questioning for the purpose of directing [John E.] to 'a better description' of the firearm used against him." To assess counsel's failure to object, we first consider whether the court committed misconduct. Although we find that the court's statements, albeit legally correct, were problematic, we nonetheless find that defense counsel's failure to object does not establish ineffective assistance.

"Within reasonable limits, the court has a duty to see that justice is done and to bring out facts relevant to the jury's determination." (*People v. Santana* (2000) 80 Cal.App.4th 1194, 1206; italics removed.) However, " 'a judge should be careful not to throw the weight of his judicial position into a case, either for or against the defendant.' " (*People v. Sturm* (2006) 37 Cal.4th 1218, 1237 (*Sturm*).) "Trial judges 'should be exceedingly discreet in what they say and do in the presence of a jury lest they seem to lean toward or lend their influence to one side or the other.' " (*Ibid*.) " 'A trial court has both the discretion and the duty to ask questions of witnesses, provided this is done in an effort to elicit material facts or to clarify confusing or unclear testimony. [Citations.] The court may not, however, assume the role of either the prosecution or of the defense,' and 'it must not convey to the jury the court's opinion of the witness's credibility.' " (*People v. Nieves, supra,* 11 Cal.5th at p. 494; see *People v. Harris, supra,* 37 Cal.4th at pp. 349–350.)

Lindsey argues that the trial court had no need to clarify John E.'s testimony because he "did not provide confusing or unclear testimony." But he did. When asked to describe the gun, John E. responded it was "[a]n

9

automatic weapon," but when asked to state what it looked like, he responded: "I don't know. I mean— [¶] I'm not really good with guns. I didn't have any guns at the time." When John E. was again asked to describe the gun, he testified: "I know what a revolver looks like. I know what an automatic looks like. It looked like an automatic, like maybe a 9 *milliliter* [sic], .45." (Italics added.) Given the witness's concession that he was "not really good with guns" and his incorrect description of the gun as a "9 *milliliter*," it was reasonable for the court to believe the witness's terminology should be clarified.

Lindsey next argues that "the court made clear to the jurors that it did not take [John E.'s] testimony at face value" and doubted his credibility when he testified that he knew what an automatic firearm looked like and what he saw was an automatic. But it was reasonable for defense counsel to conclude there was no prejudice to Lindsey from an insinuation that a *prosecution* witness—indeed, the victim and complaining witness—was not credible in his description of the assailant's purported weapon.

Lindsey further argues that the trial court "provided an erroneous definition of automatic firearms, claiming that automatic firearms are machine guns when they can also be handguns, which necessarily caused [John E.] to change his answer as to what type of firearm was used in the assault." He goes so far as to call this instructional error, even though it was not an instruction to the jury. He is incorrect.

Although the trial court started by saying "an automatic weapon is a machine gun," the court continued by explaining—accurately—that "it's a gun that you could fire with one pull of the trigger, fires multiple bullets with one squeeze." (See *In re Jorge M.*, *supra*, 23 Cal.4th at p. 874, fn. 4 ["An automatic firearm 'will continue firing until either the trigger is released or

10

the ammunition has been expended.' "].)  Furthermore, Lindsey overlooks section 16880, subdivision (a), which defines a " 'machinegun' " as "*any* weapon that shoots . . . automatically more than one shot, without manual reloading, by a single function of the trigger." (Italics added.)  As defined, a machinegun legally refers to any automatic firearm, including an automatic *handgun*.  Lindsey fails to show that the court committed legal error in its depiction of automatic weapons.

That said, the trial court's exchange with John E. was problematic. While the court was legally correct that an automatic firearm is a machinegun, the term could conjure up a notion in the mind of the witness or jurors of something necessarily larger than a handgun.  Moreover, the court's ultimate question to the witness was overly suggestive.  Despite John E.'s testimony that the firearm was an automatic, and without explaining the distinction between an automatic and a semiautomatic, the court stated to John E.: "I understand you to say that maybe this was a semiautomatic firearm.  Was that a better description?"  The leading nature of the question, combined with the authoritative status of the court and the court's display of a knowledge of guns superior to that of the witness, threatened to prompt the witness to answer in a way that would favor the prosecution, and implied that the court had knowledge of facts beyond what had been introduced into evidence.[6]

---

[6]    There is no indication in the record that the trial judge was anything but well-intentioned in his comments.  This case serves as a good reminder, however, that judges presiding over jury trials should be cautious when interjecting themselves into counsel's examination of witnesses and carefully phrase any questions that are designed to clarify a witness's testimony on critical issues in the case.

Nonetheless, Lindsey's defense counsel may have had a reasonable tactical reason *not* to object. (See *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266 [ineffective assistance claim must generally be rejected unless there is no possible satisfactory explanation for counsel's conduct].) First, whether the firearm was an automatic rather than a semiautomatic was not material to the defense theory that the firearm was a *non*-automatic revolver. Defense counsel may have reasonably believed that it would be wiser to focus on the distinction between semiautomatic firearms and revolvers, than to object and turn attention to the distinction between semiautomatics and full automatics.

Second, defense counsel may have reasonably believed that Lindsey would *benefit* from the trial court suggesting to the witness that the firearm was a semiautomatic rather than an automatic. At the time of John E.'s testimony, Lindsey faced an enhancement for personally using an assault weapon or *machine gun* (§ 12022.5, subd. (b)), which carried a potential term of 5, 6, or 10 years. Defense counsel may have therefore welcomed the colloquy that resulted in John E. testifying that Lindsey's weapon was a semiautomatic and *not* a machine gun.[7] Similarly, if counsel had objected to the court's questions and the court had relented, John E.'s testimony that the firearm was an "automatic" could have prompted the prosecutor to attempt to amend the Information to allege assault with a *fully* automatic weapon, which carries a stiffer prison sentence than what Lindsey was facing. (§ 245, subd. (a)(3).)

---

[7] In fact, after John E.'s testimony that Lindsey used a semiautomatic, the trial court pointed out to counsel, outside the jury's presence, that "nobody would believe" the enhancement under section 12022.5, subdivision (b) would apply given the facts of the case, and the prosecutor thereafter amended the allegation to conform to the proof at trial, asserting an enhancement for personal use of a firearm (§ 12022.5, subd. (a)), which carries a lower potential term of just 3, 4, or 10 years.

Third and alternatively, even if defense counsel saw an advantage in maintaining John E.'s testimony that the firearm was an "automatic" because it would not support the existing count 2 charge of assault with a semiautomatic, defense counsel could have reasonably believed that dissuading the trial court from making its inquiry would not have done any good. After all, if defense counsel had objected and the court had not elicited John E.'s testimony that the firearm was a semiautomatic, defense counsel could reasonably expect the *prosecutor* to elicit that information to prove the charge. Objecting to the court's inquiry therefore would have only placed unwanted emphasis on the inevitable evidence that the firearm was a semiautomatic. In short, Lindsey has not established that the lack of an objection was without any reasonable tactical purpose, or that defense counsel's performance fell below an objective standard of reasonableness. (See *People v. Frierson* (1979) 25 Cal.3d 142, 158 [lack of objections to evidence reflects "tactical decisions on counsel's part and seldom establish[es] a counsel's incompetence"].)

### b. Prejudice

Nor has Lindsey established prejudice. Again, even if defense counsel had successfully objected to the trial court eliciting John E.'s testimony that the firearm was a semiautomatic, the prosecutor would have elicited that information anyway. And even if John E. had never testified that the firearm was semiautomatic, there was ample other evidence—from more persuasive witnesses—that it was. Officer Moraga noted that the nine-millimeter casings found on the front seat of John E.'s SUV indicated that the bullets were shot from a semiautomatic firearm. Detective Gonzalez further explained that semiautomatics extract fired cartridges while revolvers do not.

13

Indeed, the prosecutor's argument in closing was that the shell casings and law enforcement testimony proved that the firearm was a semiautomatic.

To the extent the trial court's questioning could have been perceived as favoring one party or the other, the judge twice instructed the jurors that they were not to "take anything that [he] may have said or done during the course of this trial as any indication of what [the judge thought] about the facts, the witnesses, or what [the jury's] verdict should be." (CALCRIM No. 3550.) We presume the jurors followed the court's instruction. (*People v. Thornton* (2007) 41 Cal.4th 391, 440.)

Finally, it is undisputed that the trial court correctly instructed the jury, pursuant to CALCRIM No. 875, that a "semi-automatic firearm or semi-automatic pistol is defined as a firearm or pistol with an operating mode that uses the energy of an explosive and a fixed cartridge to extract a fired cartridge and chamber a fresh cartridge with each single pull of the trigger." The task for the jury in deciding count 3, therefore, was to decide how the firearm *operated*, not how it looked physically or how it appeared to a lay victim who admittedly knew little about guns. As described above, there was ample evidence from law enforcement witnesses on this question, and the resolution of the issue had nothing to do with whether John E. believed he saw an "automatic" or a "semiautomatic." There is no reasonable probability Lindsey would have obtained a more favorable outcome at trial if counsel had objected, and Lindsey fails to demonstrate ineffective assistance of counsel. (*Strickland*, *supra*, 466 U.S. at p. 697.)

B.  Remand for Resentencing

After Lindsey was sentenced to multiple upper terms and filed his appeal, Assembly Bill No. 124 (AB 124), Senate Bill No. 567 (SB 567), and Assembly Bill No. 518 (AB 518) were signed into law effective January 1,

14

2022. Lindsey contends these new laws require that his case be remanded for the trial court to consider resentencing. Respondent agrees that remand is appropriate, and we will so order.

1. AB 124

AB 124 amended section 1170 by making the lower term the presumptive sentence for a term of imprisonment when certain conditions exist. (Stats. 2021, ch. 695, § 5, adding § 1170, subd. (b)(6).) Specifically, subdivision (b)(6) of section 1170 now provides: "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." AB 124 also added section 1016.7, subdivision (b), which provides that "[a] 'youth' for purposes of this section includes any person under 26 years of age on the date the offense was committed." (Stats. 2021, ch. 695, § 4.)

Respondent agrees that the amendments made by AB 124 to section 1170, subdivision (b), apply retroactively to Lindsey. As respondent further acknowledges, the matter should be remanded for the trial court to consider resentencing under that statute, because the trial court imposed the upper term on counts 1–3 and the middle term on count 4, Lindsey was 24 years old at the time of the offenses, and the judgment is not yet final.

2. SB 567 and AB 518

SB 567 made the middle term the presumptive sentence in the absence of certain circumstances. (See Stats. 2021, ch. 731, § 1.3, adding § 1170,

15

subd. (b)(1), (2).)  AB 518 amended section 654 by removing the requirement that a defendant be punished under the provision that carries the longest term of imprisonment and granting the trial court discretion to impose punishment under any applicable provision.  (See Stats. 2021, ch. 441, § 1.)

Respondent acknowledges that SB 567 and AB 518 also apply retroactively.  We need not consider the merits of Lindsey's claims regarding their application to his sentence, however, because upon the remand for resentencing based on AB 124, the trial court may revisit its prior sentencing decisions under all the new legislation.  (See *People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425 [explaining the " 'full resentencing rule' "].)

### III.  DISPOSITION

We remand for the trial court to consider resentencing in light of applicable law, including AB 124, AB 518, and SB 567.  The judgment is affirmed in all other respects.

CHOU, J.

We concur.


JACKSON, P. J.
SIMONS, J.


*People v. Lindsey* / A164328